United States District Court
Western District of New York

Pg. 1

Notice of Initiating

Complaint Pursuant to Civil Rights Act, 42 U.S.C §1983

Gregory Ramos

v.

Civil Action No:
24-CV-6325-FPG

Tina Shearman, Sarah Shearman, Racquel M. Rodriguez, Richard D. Brady, Erie County Sherriff Department's Al Rozansky, Buffalo ~~[redacted]~~, Byron Lockwood Commissioner of the Buffalo Police Department, Buffalo Police Department Homicide Squad Detectives (Sargeant Carl Lundin, Detective James Kaska, Detective Brendan Kiefer, Detective James Kaska, Detective John Garcia, and Detective Mary Evans), Erie County District Attorney John Flynn, Erie count District Attorney Assistants (Colleen Curtain Gable esq., John P. Feroleto esq., Colin X. Fitzgerald esq., Ashley M. Morgan esq., Paul J. Williams III esq., Michael J. Hillery esq.), Erie County Acting District Attorney Michael J. Flaherty, Jr. esq, Administrative Judge Eighth Judicial District Paula L. Feroleto, Hon. Thomas P. Franczyk J.C.C, Hon. Christopher J. Burns J.S.C, S.O.S Detective Mark Constantino, Cattaragus DEA Task Force Officer Cory Higgins, and all unknown conspirators

## Statement of Jurisdiction

This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C §1983 The Court has jurisdiction over the action pursuant to 28 U.S.C §§ 1331, 1343 (3) and (4), and 2201.

## Parties To Action

**Plaintiff:** Gregory Ramos Reg No. 26892-055
Canaan U.S.P
3057 Eric J. William Memorial Drive
Waymart, PA 18472

**Defendant:** Buffalo ~~[redacted]~~, Byron Lockwood Police Commissioner, Joseph Gramaglia Deputy Police Commissioner, Homicide Squad of Buffalo Police Department, Homicide Squad Sargeant Carl Lundin, Detective James Haska, Detective Brendan Kiefer, Detective John Garcia, Detective Mary Evans, S.O.S. Detective Mark Constantino, and all unknown conspirators of the Buffalo Police Department.
Buffalo Police Headquarters
65 Niagara Square
Buffalo, NY 14202             • Sued in • individual Capacity

**Defendant:** Erie County District Attorneys - John Flynn, Acting Erie County District Attorney Michael J. Flaherty, Erie County District Attorney Assistants - Colleen C. Gable esq., John P Feroleto esq., Colin X. Fitzgerald esq., Ashley M. Morgan esq., Michael J. William III esq., Michael J. Hillery esq.
District Attorney office County of Erie
25 Delaware Avenue
Buffalo, NY 14202             • Sued in • individual Capacity

**Defendant:** Administrative Judge Eighth Judicial District Paula L. Feroleto, Judge of County Courts Thomas P. Franczyk, Judge of Supreme Courts Christopher J. Burns.
Erie County Supreme and County Courts
25 Delaware Avenue
Buffalo, NY 14202             • Sued In • individual Capacity

## Parties to Action
### Continued

Pg.3

Defendant: Erie County Sherriff Department's Al Rozansky
Erie County Sherriff Department
Delaware Avenue
Buffalo, NY 14202         • Sued in • individual capacity

Defendant: Tina and Sarah Shearman
West Avenue
Buffalo, NY 14213         • Sued in • individual capacity

Defendant: Racquel M. Rodriguez

North Tonawanda, NY       • Sued in • individual capacity

Defendant: Richard D. Brady

                          • Sued in • individual capacity

The private witnesses were under District Attorney of Erie County's care redacting the residences of those witnesses.

## Previous Lawsuit in State and Federal Courts

A. No I have no other claim involving these facts.
B. No I have no other lawsuits related to this imprisonment.

## Statement of Claim

Pg.4

The instant action arises from a conspiracy to wrongfully convict Gregory Ramos, the petitioner in this claim violating the rights on State and United States Constitutional levels.

Plaintiff first has a harrassing visit by defendant Det. Mary Evans and unknown caucasian male detective. At this visit Plaintiff was held at Erie County Holding Center. The defendant orchestrated a secret visit on the normal visiting floor of ECHC with Plaintiff. Det. Mary Evans while accompanied by unknown detective harrassed Plaintiff telling Plaintiff "Your here with serious charges and won't be going home anytime soon, but I may be able to change that if you have some helpful info". Plaintiff knew nothing of what the context or agenda of defendants was so Plaintiff asked defendants "okay and whats that," Det. Mary Evans go on about an incident with a friend of Plaintiff being involved in a homicide and why she knew I could offer pertinent information. When Plaintiff explained that the dates conflicted with my incarceration in 2009, defendant gave me assurance she could get around that if Plaintiff was willing to say or agreed to cooperate. At this point the other unknown detective was shifting uncomfortable behind Det. Mary Evans so Plaintiff further expresses disinterest in defendants offer. The composure of Det. Mary Evans became irrate while threatening Plaintiff "We'll see", "I'ma make sure of it" these statements were caused by Plaintiffs allegations of innocence and optimism of returning home.

Now Det. Mary Evans was ushered by other unknown detective away from visiting table where Plaintiff had been sitting, while getting up Det. Ma[ry] turns over and grabs a device from beh[ind]

This incident all occurs late August of 2015. Fast forward to May 20, 2016 a shooting occurs at a world renowned Anchor Bar; around 7pm. The victim "Phreddie" Freddie Dizon my common law wife at the time Racquel M. Rodriguez's cousin and longtime friend of Plaintiff. The "investigation" suspect another good friend of Plaintiff the same friend Det. Mary Evans wanted Plaintiff to help investigate during defendants' visit with Plaintiff at the Erie County Holding Center (ECHC).

A couple days later after May 20, 2016 when my oldest daughter had missed school that Friday and Plaintiff and common law wife Racquel M. Rodriguez later in the night had argued breaking it off, Plaintiff gets a Facebook messenger text from Racquel M. Rodriguez evicting Plaintiff out of the home in which he resided and paid rent and utilities. Plaintiff found this disturbing and went to the residence to remove his valuables in anticipation that Racquel M. Rodriguez maybe on the way to destroy them not uncommon or uncharacteristic of her. But to Plaintiff's suprise it was a setup. The Buffalo Police Department Homicide Squad had put out a felonious warrant and "B.O.L.O" Be On The Look Out for Plaintiff in connection for questioning of a homicide. Now at this point there was no such need Plaintiff was still on bail-bond for the August 15, 2015 arrest and defense counsel the late Leigh Anderson was Plaintiff's lawyer in the Hon. Pridgeons court. A simple call would have sufficed apprehension was made of the Plaintiff. While at the Homicide Headquarters of the Buffalo Police Department Plaintiff explained the counsel interested to be contacted and while emptying Plaintiff's wallet Homicide Det. James Kaska assured Plaintiff that counsel was contacted an awaiting the arrive.

Plaintiff was escorted and told to sit in a room, due to Plaintiff's distrust acted as if english was a far second language trying to delay for arrival of counsel. Det. James Kaska nor any other detective had any interest in reaching out to any lawyer and hadn't defendants John Garcia, later learned not even to be a detective at this time, and Det. James Kaska enter the room "The Interrogation Room". Defendants coercively turn the questioning into a interrogation "grilling" Plaintiff. Plaintiff was completely uncooperative giving no signature on Miranda Rights card the defendants insisted throwing the procedure to the wind. Defendant Garcia crumbles the Miranda Rights card while Det. James Kaska further pushes. Plaintiff goes through the interrogation defendants every chance they get trying to trick certain answers out of Plaintiff. All in All the interrogation video shows the defendants threatening Plaintiff violating the personal space of the Plaintiff irrately calling the Plaintiff a liar. Defendants denied the Plaintiff access to the lawyer on video eventhough Plaintiff showed the interest in having this lawyer present. Defendants still push forward this goes on for hours cuffed and visibly tired Plaintiff is taking from the BPD Homicide Squad Headquarters to the City Booking.

After being booked and arraigned Plaintiff was transported to Erie County Holding Center on unrelated charges juiced and trumped-up by Detective S.O.S Mark Constantino to ensure the further detention of the Plaintiff while defendants known and unknown created enough dirt to create any evidence fabricated/false or not to solidify their new statements which made Plaintiff a person of interest. These statements came from Tina Shearman through a Facebook tip page for the Buffalo Police after Tina Shearman and Sarah Shearman had been in contact

with Det. Mary Evans and/or other unknown defendants at Freddie Dixon's residence with his mother. Defendant Mary Evans integrated herself into this investigation as if it was assigned to her. She admits to listening in on phone conversation play by play. Here is where later comparison is noticed in the attempt to seek assistance Det. Mary Evans states under penalty of perjury that four phone calls were suspicious enough to be criminal and important to obtain a search warrant. She admits to requesting on her own behest turning them over to the DEA TASK FORCE OFFICER Cory Higgins who with these calls and other false information requested search warrants. The calls are very important later after June 2016 search warrant where again Det. Mary Evans is present with Cory Higgins TFO and others. A jailhouse informant namely Richard D Brady cooperates and gives an exact account of a confession supposedly obtain from Plaintiff. This is pertinent as to other defendants because the account Richard Brady gives is exactly the same as evidence produced by discovery from "Ping" cellular tower activity by Erie Crime Analysis Center on the behest of the Buffalo Police Dept. for the homicide case of the Anchor Bar Shooting investigation. The evidence shows the Suspect of the Achor Bar Shooting's phone activity bouncing around the same areas as defendant Richard D. Brady's statements that he asserts came from a confession of Plaintiff. Then to put the icing on the cake in those same papers of defendant Richard D. Brady also made inference toward Plaintiff's interest in acquiring Ryan's assistance to obtain a lawyer. This conversation is word for word a conversation in between Plaintiff's mother and Plaintiff. This isn't the only conversation Plaintiff had that was turned over in an intent to ruin Plaintiffs character, liberty, and relationships.

Another instance where information that Det. ~~####~~ Evans is in possession of that is turned over. Christina Evans Plaintiff's companion was given a conversation had between Amanda Cruz (Plaintiffs' sister) and Plaintiff, where Plaintiff is gloating about having used a woman ~~###~~ as a money cow and nothing else. Det. Mary Evans used the emotional insecurities to bring out a break-up of someone important ~~######~~ in Plaintiff's time of hardship.
 September 30, 2016 Plaintiff and Jorge Suarez were indicted for the murder of Freddie Dizon. Plaintiff brought many pre-trial motions asking for several reliefs from the charges, also examination of the process in which the defendants Colleen Curtain Gable .esq, John P. Feroleto .esq, and who may be an unknown defendant to obtain the People's indictment against Plaintiff. This indictment was arraigned in Hon. Thomas P. Franczyk as the judge. During this time Brady the jailhouse snitch is being utilized to assist and aid in convicting John Avent in Foxtrot North for a day moved to Gulf North after being released on parole and violated. So defendants Al Rozansky in agreement with Richard D. Brady, D.A.'s employees, and Buffalo Police employees, place Richard D. Brady with Plaintiff to utilize Richard D. Brady as an agent to seek a wrongful conviction and validate the evidence of the defendants. So now its November 2016 and right after this information was obtained Richard D. Brady knew exactly how to get the evidence to the people who needed it because he was coached by other defendants before hand. Well the defendants knew that procedurally needed a way to change the theory they now had. So December 7, 2016 counsel puts in a Omnibus motion border plate which was responded to 14 days later.
The judge Hon. Thomas P. Franczyk orders decision next day this all was a performance to assist the proceeding

The order of dismissal allowed the defendants reconvene the evidence but to a new Grand Jury so the theory would be changed without a hitch.

But defendants now answer to a new District Attorney John Flynn and he pushes for the evidence infront of the same GrandJury on the news they were all trying to keep the public believing there was overwhelming evidence against the Plaintiff. This was the strategy of the defendants "smudge campaign" the Anchor Bar Shooting all over the media. So when it came time for the trial they could just use the redacted evidence as a hint to more prejudicial evidence that just could not be used to be fair, leading the jurors to be leave they were not seeing all the evidence against the Plaintiff.

As this unfolded Hon. Thomas P. Franczyk retires but before he does one more favor is needed by the other defendants. Hon. Thomas P. Franczyk knowingly, deliberately, and in concert with other defendants states in an order and decision that the Court himself has reviewed the Grand Jury minutes and finds them to meant all elements of the charges. The defendant is clearly in bed with other defendants no way does Franczyk J.C.C., not take note of the clear disregard of his order, further denies suppression, severs the trials so that the other defendants change the theory, pushes Jorge Suarez trial first, and then retires. To many coincidences create facts of evidence this allowed Paula L. Feroleto to transfer, and assigned Hon. Christopher J. Burns. This was committed without authority and jurisdiction since no valid indictment had been made. Hon. Christopher J. Burns allows for relief of Plaintiff adopting all decisions made by Hon. Thomas P. Franczyk and denying all other relief except the reassignment of defense counsel to Brian Parker from Joseph Terranova.

The Buffalo Police Detectives and officers acted in concert to submit false firearm recovery report to the A.T.F. to create fabricated license plate reader photos, ommitted statements, bolstered false testimony etc., all to assist other defendants in wrongfully convicting Plaintiff. Plaintiff objected to license plate reader after defendant had been testifying about the fabricated evidence. Hon Christopher J. Burns found the tangible evidence (license Plate Reader Photo) problematic but never struck the testimony heard by the jurors. Plaintiff tried several times to impeach witnesses Brady, Shearman, and Rodriguez caught in so many lies, recieving assistance for providing testimony, etc.).

Plaintiff tried twice to submit motions post trial and the defendants John P. Feroleto Colin X Fitzgerald, and Ashley M. Morgan denied having to hear them stating they argued those particular only on direct appeal since they pertained to weight of the evidence. Another time same defendants state that Plaintiff's arguement was already heard infront of the Court before and needed not re-visit which was false.

Defendant John Flynn later on Plaintiff's appeal to Appellate Division 4th Dept. enters brief disregarding the fact that it is clear the defendants were advised to submit the charges to a new Grand Jury, at which point they did not have authorization to proceed (lacking jurisdiction). Defendants ask Appellate Division 4th Dept. judges to disregard this callous abuse of authority to affirm Plaintiff's jury trial verdict. The meaning of a judge making such a decision to dismiss can have maintained purpose of ensuring proper formalities. Defendants refused to abide violating the order/authorization to proceed no matter how or what came after such violation. Eventhough Appellate Division 4th Dept. judges unanimously acted

as 13th juror acquitting Plaintiff on basis of illegally insufficient weight of evidence to charge Plaintiff due to their clear and convincing belief that Richard D. Brady falsely testified and should not be given any credibility due to the inconsistency, ~~and~~ specific, percise recollection.

The defendants call their actions inconsequential irregularity if this isn't callous then its definitely careless intent. As to say "who cares if we break the law, we are the law." The defendants go on to say Richard D. Brady's testimony was provided in addition as "Very important additional proof", Well Appellate Division 4th Dept. took this into grave consideration when rendering their unanimous decision. The intent to provide additional evidence rather than resubmit shows the maliciousness and callousness of the defendants they could have at any point stopped the act. Defendants are well experienced and should have known these acts to be completely prejudicial to Plaintiff's fair trial it is easy to comprehend if a Grand Jury once indicted the Plaintiff on insufficient evidence the same result would be the outcome with additional prejudicial testimony. The acts of the defendants were wanton, willful, unlawful, malicious, and vicious, without regard for the system of justice in these United States.

### Exhaustion of Remedies

Exhaustion of Administrative Remedies as defined in 42 U.S.C §1997 e(a) has been ~~~~ satisfied by Plaintiff.

## Claim For Relief

Pg. 12

The acts of the defendants that constitute deprivation of the Plaintiff's civil rights and are the basis of the Claims in this action include the First, Fourth, Fifth, Fourteenth and any other deprivation of the constitution of Plaintiff's civil rights that may be determined by the trier of fact may deem proper and just.

**1st Claim**: Violation of Legally Sufficient Basis - Defendants had legally insufficient evidence to charge Plaintiff in prosecution, etc.,. All defendants except: Shearmans, Rodriguez-Racquel, Brady-Richard, Al Rozansky.

**2nd Claim**: Failure to Intervene - Defendants at any point after being put on notice by Plaintiff could have investigated deeper in the interest of justice and stopped the prosecution in their discretion. All defendants except: Shearmans, Rodriguez-Racquel, Brady-Richard, Al Rozansky.

**3rd Claim**: Conspiracy to Wrongful Convict Plaintiff - All defendants communicated, acted in-concert, convened, and or conspired in benefit to convict Plaintiff while in agreement with two or more other defendants. All defendants known and unknown.

**4th Claim**: Lack of Jurisdiction - Defendants lacked legally sufficient evidence to prematurely remand Plaintiff and proceeding in their object of convicting Plaintiff while conspiring to disregard authorization and statutory law.

**5th Claim**: Abuse of Procedural Due Process - Defendants disregarded statute and procedure while utilizing and bolstering fabricated, and false testimony, witnesses, and evidence to promote political interest of "taking down Anchor Bar perps" convicting Plaintiff prematurely end investigations and disregarding system of justice. All defendants except: Shearmans, Rodriguez-Racquel, Brady-Richard, Al Rozansky

**6th Claim**: Cruel and Unusual Punishment - Defendants knowingly, willfully, unlawfully, maliciously, and viciously, with purpose to punish Plaintiff for the disinterest to lie, wrongfully convicted Plaintiff effecting Plaintiff's ability to recieve programs, goodtime credit, reputation and excessive court rides in the excess of 100 bus rides. Prosecutors, Detectives, Judges, and unknown defendants.

## Claim for Relief
### Continued

Pg. 13

**7th Claim**: Search and Seizure - Defendants devised a plan to remand Plaintiff's vehicle eventhough procedure of Buffalo Police impound after assessment of vehicle (K-9 sweeps, inspection checks, etc.,) is to release vehicle. Det. Mary Evans knew they lacked probable cause to hold vehicle, so fabricated evidence to provide TFO Cory Higgins at which point he relayed information to use Federal authorities to achieve search warrant. This remanded vehicle delaying process. Both Det. Mary Evans and TFO Cory Higgins agree to untrue information.

**8th Claim**: Malicious Prosecution - All defendants willful neglect of statute and procedure, even fabricating and utilizing the misuse of discretion to allow false testimony and evidence. Not only was it an abuse to charge Plaintiff, but when dismissal was ordered defendants went even further violating jurisdiction to convict All City, County, and private actors known and unknown.

**9th Claim**: Retaliation - Plaintiff sternly denies to cooperate with Detective Mary Evans and unknown defendant against Jorge Suarez at a secret visit at the Erie County Holding Center while Plaintiff was in custody late 2015 later that case was dismissed. Det. Mary Evans irrate composure and threats convey basis.

**10th Claim**: Deprivation of Fair Trial - Defendants deliberately by any means necessary prosecuted Plaintiff changing theory, fabricating evidence, disregarding procedure, solidifying unauthorized indictments, etc.,.

**11th Claim**: Defamation - Conveying information of guilt to News, Social, and others (Dixon's family, etc.,) harming family ties, reputation, emotional, psychological, and physical suffering. Conveying that Plaintiff had been facing overwhelming evidence of guilt for these charges. Unusual for anyone to convey such information over a stretch of time like the duration of this case. This was clearly a smudge campaign against Plaintiff.

## Jury Demand

Plaintiff demands trial by jury on all issues triable by jury in this action.

### Prayer

Plaintiff seeks:

Declaratory judgement that the acts of the defendants violated the Plaintiff's civil rights;

An award of compensatory damages to Plaintiff in the amount of 7 million dollars or to be determined by the trier of fact as to compensate the Plaintiff for the injuries described in this complaint;

An award of punitive damages to Plaintiff in the amount of 7 million dollars or to be determined by the trier of fact as to sufficiently punish each defendant against whom these damages are awarded and sufficient to deter similar conduct in the future by these defendants;

An award of reasonable reimbursement costs and expenses to Plaintiff in this action; and

An award to Plaintiff of all other relief that is just and proper.

Executed Dated: 5-20-24

Truly,
Gregory Ramos

I declare under penalty of perjury that the foregoing is true and correct.

Gregory Ramos
26892-055
Canaan U.S.P
3057 Eric J. William Memorial Drive
Waymart, PA 18472